UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

RUFINO ACOSTA,

                        Plaintiff,

            -against-

SUPERIOR ONE MANAGEMENT CORP. d/b/a SUPERIOR APARTMENTS and d/b/a SUPERIOR APARTMENTS MANAGEMENT, 3336 MK REALTY GROUP LLC, 1201 MK REALTY GROUP LLC, MK REALTY GROUP, LLC, 1905 MK REALTY GROUP LLC, 1756 MK REALTY GROUP LLC, 1757 MK REALTY GROUP LLC, 2250 SUPERIOR APARTMENT LLC, SUPERIOR APARTMENTS, LLC, 1242 SUPERIOR APARTMENT I LLC, and ABDUL KHAN,

                        Defendants.

------------------------------------------------------------X

Case No. 21-cv-1163

**COMPLAINT**

**PLAINTIFF DEMANDS TRIAL BY JURY**

Plaintiff RUFINO ACOSTA ("Acosta" or "Plaintiff"), by his attorneys, RAPAPORT LAW FIRM, PLLC, as and for his Complaint, alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action to seek unpaid wages, including unpaid minimum wages, overtime compensation and interest thereon, reimbursement for unlawful deductions, liquidated damages and other penalties, injunctive and other equitable relief and reasonable attorneys' fees and costs, under, *inter alia*, the Fair Labor Standards Act ("FLSA") §§ 6 and 7, 29 U.S.C. §§ 206 and 207.

2. This action further invokes the supplemental jurisdiction of this Court to consider claims arising under New York Labor Law ("NYLL") (e.g., New York Wage Payment Act; NY Labor Law §§ 191, 193, 195, and 12 N.Y.C.R.R. Part 141-1.9, 2.10, Part 142), and NY Labor Law § 215).

3. At all relevant times, Defendants SUPERIOR ONE MANAGEMENT CORP. d/b/a SUPERIOR APARTMENTS and d/b/a SUPERIOR APARTMENTS MANAGEMENT ("Superior Apartments"); 3336 MK REALTY GROUP LLC; 1201 MK REALTY GROUP LLC; MK REALTY GROUP, LLC; 1905 MK REALTY GROUP LLC; 1756 MK REALTY GROUP LLC; 1757 MK REALTY GROUP LLC; 2250 SUPERIOR APARTMENT LLC; SUPERIOR APARTMENTS, LLC; 1242 SUPERIOR APARTMENT I LLC; and ABDUL KHAN ("Khan") (collectively, "Defendants") operated as a unified and centrally-controlled real estate enterprise, operating from a management office at 2250 Grand Concourse, Bronx, New York, that owns and controls at least 20 apartment buildings in Kings, Bronx and Westchester Counties.

4. At all relevant times, Defendants operated as a unified enterprise that functioned under the direction and control of Khan, and they had policies of encouraging and/or requiring building maintenance workers, including Plaintiff, to work in excess of forty (40) hours per week, at rates of pay that were, at times, below minimum wage, and without paying them overtime compensation as required by the FLSA and NYLL.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction of this action pursuant to the provisions of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 et seq., including under 29 U.S.C. §§ 207, 216, and 217. This Court also has jurisdiction in light of the existence of a controversy arising under the laws of the United States (28 U.S.C. §1331) and supplemental jurisdiction to consider claims arising under New York state law, pursuant to 28 U.S.C. §1367.

6. Venue as to Defendants is proper in this judicial district, pursuant to 28 U.S.C. §1391. Defendants transact business and have agents in the Southern District and are

otherwise within this Court's jurisdiction for purposes of service of process. Defendants operate facilities and employed Plaintiff in this judicial district.

7. This Court has personal jurisdiction over the Defendants, pursuant to New York Civil Practice Law and Rules § 301, in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiff within the State of New York and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the law of the State of New York, and accordingly may be served with process pursuant to Rule 4(h)(1), Fed.R.Civ.P.

## THE PARTIES

**Plaintiff**

8. Acosta is an adult, natural person who resides in Bronx County, New York.

9. Plaintiff began working for Defendants approximately ten years ago, initially, as a painter. Thereafter, beginning approximately seven years ago, and continuing to the present, Plaintiff has been the superintendent of Defendants' 38-unit apartment building located at 1201 University Avenue, Bronx, New York (the "University Avenue Building").

10. Plaintiff continues to work as the superintendent of the University Avenue Building. However, by Order dated December 24, 2019, the Bronx County Supreme Court appointed the Hon. Ariel Belen as receiver of the University Avenue Building.

11. Through this Complaint, Plaintiff asserts claims for unpaid minimum and overtime wages and related wage claims from the beginning of the NYLL six-year limitations period (six years prior to the filing of this Complaint) and FLSA three-year limitations period (three years prior to the filing of this Complaint), through January 2021, when a court-appointed receiver took over management of the University Avenue Building.

12. During the entire period of Plaintiff's employment with Defendants, Plaintiff's job responsibilities extended far beyond serving as superintendent of the University Avenue Building.

13. Several days per week, Defendants dispatched Plaintiff to work at Defendants' apartment buildings located throughout Upper Manhattan and the Bronx, which included extensive projects involving plastering, painting, roof repairs and other renovations and repairs.

**Defendants**

14. Upon information and belief, Defendants operate as a unified enterprise for a common business purpose, to wit: Owning, managing and controlling approximately twenty apartment buildings (the "Buildings") in New York City and Westchester County, which are nominally titled in the name of title-holding companies wholly controlled by Khan.

15. Defendants control the Buildings through their intertwined management and title-holding entities ("Defendant Corporations"), which are owned, managed and controlled by Khan.

16. The specific Buildings where Plaintiff performed work, as well as limited liability companies holding title to each building, are set forth in Schedule A hereto.

17. The Defendant Corporations that comprise Defendants' enterprise were owned and controlled by Khan, whom the New York City Public Advocate has placed on New York City's "Worst Landlord Watchlist." Seven of Khan's Bronx apartment buildings that were placed on the list due to their substantial number of violations.

18. Khan is an individual engaging in (or who was engaged) in business in this judicial district during the relevant time period.

19. Khan is sued in his capacity as joint employer of Plaintiff, and owner, officer and/or agent of Defendant Corporations.

20. Khan possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations.

21. Khan personally determines the wages and compensation of the employees of Defendants, including Plaintiff, establishes work schedules and practices, maintains payroll records, and has the authority to hire and fire employees.

22. In addition to personally supervising Plaintiff's work at the Buildings, Khan personally dispatched Plaintiff to perform work at Khan's personal residence, located at 1893 North Jerusalem Road, East Meadow (Nassau County), New York.

23. The Defendants operate from a central office located 2250 Grand Concourse, Bronx, NY 10457 (the "Grand Concourse Office") where Khan, together with property management staff members, oversee operations of the Buildings and control the wages and duties of the Buildings' superintendents.

24. Defendants share a common website (www.superiormanagementcorp.com), in which Defendants state that "Superior Management has been managing buildings in the New York City area. We offer safe, secure and modern apartments suitable for any income." (superiormanagementcorp.com, accessed on February 6, 2021).

25. Upon information and belief, and at all times herein relevant, Superior One Management Corp. is a New York corporation doing business in Bronx and Kings Counties with a principal place of business located at 2250 Grand Concourse, Bronx, New York.

26. Upon information and belief, 3336 MK Realty Group LLC is a New York corporation doing business in Bronx County, New York, with a principal place of business at 2250 Grand Concourse, Bronx, New York.

27. Upon information and belief, 1201 MK Realty Group LLC is a New York corporation doing business in Bronx County, New York, holds title to the property located at 1201 University Ave., Bronx, New York, where Acosta performed work as superintendent.

28. Upon information and belief, MK Realty Group, LLC is a New York corporation doing business in Bronx County, New York.

29. Upon information and belief, 1905 MK Realty Group LLC is a New York corporation doing business in Bronx County, New York.

30. Upon information and belief, 1756 MK Realty Group, LLC is a New York corporation doing business in Bronx County, New York.

31. Upon information and belief, 1757 MK Realty Group, LLC is a New York corporation doing business in Bronx County, New York.

32. Upon information and belief, 2250 Superior Apartment LLC is a New York corporation doing business in Bronx County, New York.

33. Upon information and belief, Superior Apartments, LLC is a New York corporation doing business in Bronx County, New York, with a principal place of business located at 2250 Grand Concourse, Bronx, New York.

34. Upon information and belief, 1242 Superior Apartment I LLC is a New York corporation doing business in Bronx County, New York.

35. Khan is designated as the "managing agent" for most, if not all, of the Defendants' buildings, as reflected on the Rent Registrations filed by Defendants with the New York City Department of Housing Preservation and Development (the "HPD").

36. Upon information and belief, Khan is the head officer of the corporations that hold title to the Buildings, as reflected on Rent Registrations filed by Defendants with the HPD.

37. Upon information and belief, Khan is the sole member and/or most senior officer of 2250 Superior Apartment LLC, 1757 MK Realty Group, LLC, 3336 MK Realty Group LLC, Superior Apartments, LLC, Superior One Management Corp. and 1242 Superior Apartment I LLC.

38. Defendants are an integrated enterprise, with common management, control, personnel policies, ownership, and inextricably intertwined operations and functioning, and they subject their employees to the same policies and procedures, in particular policies and procedures relating to the violations alleged in this Complaint

39. Defendants issued paychecks to Plaintiff from multiple entities named as defendants herein.  For example, in 2017, Plaintiff's paychecks were issued by 1201 MK Realty Group LLC; thereafter, in 2018, paychecks to Plaintiff were issued by Superior One Management Corp. In correspondence to Plaintiff, Khan identified himself as "owner" of Superior One Management Corp.

40. On their website (http://www.superiormanagementcorp.com/5001.html, accessed on February 5, 2021), Defendants use the name "Superior Apartments Management, LLC," which, upon information and belief, is not the name of any corporation organized under the laws of the State of New York.

**FACTUAL ALLEGATIONS**

41. As described herein, Defendants have, for years, knowingly engaged in unlawful business practices by requiring building maintenance employees to work numerous hours of overtime on a daily and/or weekly basis without overtime compensation that Defendants were obligated to pay under the FLSA and NYLL; paying flat weekly sums that resulted in effective hourly rates that fell below New York minimum wage; and illegally deducting sums from paychecks.

42. Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

43. At all relevant times, Defendants employed, and/or continue to employ, Plaintiff within the meaning of the FLSA and all other statutes referred to in this Complaint.

44. At all relevant times, Defendants employed, and/or continue to employ, Plaintiff within the meaning of the NYLL, §§ 2 and 651.

45. Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.00.

46. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay building maintenance employees, including superintendents, by the same method, and share control over employees.

47. Each Defendant possessed substantial control over the policies and practices over Plaintiff's working conditions.

48. Defendants jointly employed Plaintiff and were Plaintiff's employer within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

49. In the alternative, Defendants were a single employer of Plaintiff.

50. Upon information and belief, Khan operates the Defendant Corporations as either alter egos of himself and/or fails to operate Defendant Corporations as legally separate entities apart from himself. Upon information and belief, among other things, the assets and revenues of the Defendant Corporations are intermingled. Although a worker may be assigned as superintendent of a particular building, Defendants had a practice of sending each superintendent to perform work at multiple buildings that they controlled.

51. Upon information and belief, Khan operates the Buildings and the Defendant Corporations for his own benefit, without adhering to corporate form.

**Acosta**

52. Acosta began serving at the superintendent of the University Avenue Building Approximately seven years ago. He received this position after working as a painter for Defendants during the preceding three years.

53. Throughout most of his employment, Plaintiff was paid $300.00 per week, which covered only the first forty hours of work per week.

54. Commencing in or about mid-2018, Plaintiff's weekly salary was increased to $400.00 per week.

55. Approximately three years ago, Defendants began paying Plaintiff modest sums, generally ranging from $20.00 to $30.00, for some of the more extensive projects that Plaintiff was dispatched to perform at the Buildings. These payments failed to make a dent in the vast amounts of overtime compensation that Defendants systematically refused to pay to Plaintiff, and to which Plaintiff was indisputably entitled under the FLSA and NYLL.

56. Burdened with his superintendent duties, which Acosta performed without any help from a porter or other assistant, Acosta was compelled to work seven days per week.

57. Acosta's regular work schedule typically involved approximately 64 hours of work per week, as follows: Monday through Friday from approximately 6:00 a.m. to approximately 6:00 p.m.; Saturdays and Sundays: from approximately 7:00 a.m. to approximately 12:00 p.m., with no designated/uninterrupted lunch breaks.

58. In addition to his foregoing regular work schedule, Acosta was required to be on-call and handle tenant requests at all hours, which entailed weekly work hours that were far in excess of 64 hours.

59. As superintendent of the University Avenue Building, Acosta's duties involved virtually all aspects of maintenance, including removal of trash and recyclables, apartment renovations and turnovers, painting, light electrical work, light plumbing work,

shoveling snow, attending to the boiler, cleaning surface areas, repairing faucets, addressing leaks, cleaning and fixing windows, allowing access to vendors and contractors, fixing doors and locks, sweeping the sidewalk on a daily basis, and being on-call for tenant emergencies.

60. Based on the foregoing, regular 64-hour-per-week schedule (i.e., excluding on-call time and emergent repair work for which Acosta was also entitled to compensation but which was not paid to him) Acosta's effective, regularly hourly rate of pay was (a) for the period through mid-2018, $7.50 per hour for the first forty hours of work ($300 ÷ 40 = $7.50), and no pay whatsoever for the 24 hours of overtime work that Acosta generally performed each week; and (b) for the period from mid-2018 through January 2021, 10.00 per hour for the first forty hours of work ($400 ÷ 40 = $10.00), and no pay for the 24 hours of overtime work that Acosta generally performed each week.

61. As alleged below, because Defendants failed to reimburse Plaintiff for his work-related tools of the trade, Plaintiff's actual wages fell below the foregoing amounts.

62. The foregoing are conservative estimates of Acosta's schedule and wage underpayments,

63. Plaintiff was also required to perform work at Khan's house located in East Meadow, Long Island.

*Unlawful Wage Deductions*

64. Acosta was required to supply his own tools without reimbursement. These tools included a drill, painting equipment, hand tools and auger.

### AS AND FOR A FIRST CAUSE OF ACTION
**FLSA Overtime Wage Violations, 29 U.S.C. §§ 201 *et seq.***

65. Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

66. At all relevant times hereto, the Defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d). Defendants employed Plaintiff as a

maintenance worker, employment positions which engaged Plaintiff in commerce, as defined under 29 U.S.C. §§ 203(b), (e), (g) and 29 U.S.C. § 207(a)(1). At all times relevant hereto, Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

67. In the performance of his duties for Defendants, Plaintiff worked substantially more than forty (40) hours per week, yet did not receive overtime compensation for the work, labor and services he provided to Defendants, as required by the FLSA, 29 U.S.C. §§ 206 and 207. The precise number of unpaid overtime hours will be proven at trial.

68. Defendants' violations of the FLSA were willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

69. As a result of the foregoing, Plaintiff seeks judgment against Defendants for all unpaid wages, including overtime wages owed by Defendants to Plaintiff for the three-year period preceding the filing of this case, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

**AS AND FOR A SECOND CAUSE OF ACTION**
**Violation of the New York Minimum Wage Act**

70. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

71. The minimum wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and Plaintiff.

72. Defendants, in violation of the NYLL, willfully paid Plaintiff less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

73. Plaintiff was damaged in amounts to be determined at trial.

74. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### AS AND FOR A THIRD CAUSE OF ACTION
### New York Labor Law – Overtime Wages

75. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

76. The overtime wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and Plaintiff.

77. Defendants willfully failed to pay Plaintiff for all of the hours that he worked in excess of 40 hours in a workweek.

78. Defendants willfully failed to pay Plaintiff premium overtime at a rate of time and one-half his effective, regular hourly rate for all hours worked in excess of 40 hours per workweek.

79. Defendants willfully failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff.

80. As a result of Defendants' knowing or intentional failure to pay Plaintiff overtime wages for hours worked in excess of 40 hours per workweek, Plaintiff is entitled to compensation unpaid overtime, liquidated damages, attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### AS AND FOR A FOURTH CAUSE OF ACTION
### Illegal Deductions, New York Labor Law

81. Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

82. Plaintiff was required to provide his own tools of the trade without reimbursement.

83. Plaintiff was damaged in an amount to be determined at trial.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements**

84. Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

85. The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid.

86. Defendants willfully failed to provide Plaintiff with wage statements at the end of every pay period that correctly identified the name of the employer; address of employer; rates of pay or basis thereof; regular hourly rate; whether paid by the hour, shift, day, week, salary, piece, commission, or other; number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; and such other information as required by NYLL § 195(3).

87. Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants per employee liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

**AS AND FOR A SIXTH CAUSE OF ACTION**
**NYLL Wage Theft Prevention Act (WTPA) – Failure to Provide Wage Notices**

88. Plaintiff incorporates by reference in this cause of action the prior allegations of this Complaint as if fully alleged herein.

89. The NYLL and WTPA, as well as the NYLL's interpretative wage orders, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

90. From its enactment on April 9, 2011 through January 5, 2016, the WTPA also required employers to provide an annual written notice of wages to be distributed on or before February 1 of each year of employment (amended in January 2015 to be distributed "upon hiring" and not annually) and to provide to employees, a written notice setting forth the employee's rates of pay and basis thereof; the name of the employer; physical address of the employer's business; names used by the employer; and other mandated disclosure.

91. In violation of NYLL § 191, Defendants failed to furnish Plaintiff, at the time of hiring (and annually for those years prior to the January 2015 amendment) or whenever there was a change to their rate of pay, with wage notices required by NYLL § 191.

92. Due to Defendants' violation of NYLL § 195(1), Plaintiff is entitled to recover from Defendants liquidated damages in the amount of $50.00 per work day, up to $5,000.00, together with reasonable attorneys' fees, and costs of this action, pursuant to the NYLL § 198(1-b).

## **RELIEF SOUGHT**

**WHEREFORE,** Plaintiff, Rufino Acosta, respectfully requests that the Court grant the following relief:

1. Declaring, adjudging and decreeing that Defendants violated the minimum wage and overtime provisions of the FLSA and NYLL as to Plaintiff;

2. Awarding Plaintiff damages and/or restitution for the amount of unpaid compensation, unpaid minimum wages, unpaid overtime compensation, including interest thereon, and statutory penalties in an amount to be proven at trial, as well as liquidated damages;

3. Awarding Plaintiff reimbursement for all unlawful deductions, including costs that Plaintiff incurred to purchase his own tools of the trade.

4. Awarding statutory damages for Defendants' failure to provide Plaintiff with statements and information required by NYLL § 198(1-b) and (1-d) and NYLL § 195(3);

5. Awarding statutory damages for Defendants' violation of NYLL § 191;

6. Declaring that Defendants' violations of the New York Labor Law were willful;

7. For all other Orders, findings and determinations identified and sought in this Complaint;

8. For prejudgment and post judgment interest on the amount of any and all economic losses, at the prevailing legal rate;

9. For reasonable attorneys' fees and expenses of this action, pursuant to 29 U.S.C. § 216(b), New York Labor Law and as otherwise provided by law; and

10. Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated:  New York, New York
        February 9, 2021

**RAPAPORT LAW FIRM, PLLC**

By: _____s/_____

Marc A. Rapaport, Esq.
*Attorney for Plaintiff*
Rapaport Law Firm, PLLC
One Penn Plaza, Suite 2430
New York, New York 10119
Ph: (212) 382-1600
mrapaport@rapaportlaw.com

## SCHEDULE A

| Address | Title-Holding Entity |
|---|---|
| 1201 University Ave., Bronx, NY | 1201 MK Realty Group LLC |
| 1515 Selwyn Avenue, Bronx, NY | MK Realty Group, LLC |
| 1905 Andrews Ave., Bronx, NY | 1905 MK Realty Group LLC |
| 1756 Topping Ave., Bronx, NY | 1756 MK Realty Group LLC |
| 1757 Topping Ave., Bronx, NY | 1757 MK Realty Group LLC |
| 2250 Grand Concourse, Bronx, NY | 2250 Superior Apartment LLC |
| 3102 Villa Ave., Bronx, NY | Superior Apartments, LLC |
| 1242 Morris Ave., Bronx, NY | 1242 Superior Apartment I LLC |
| 3336 Perry Ave., Bronx, NY | 3336 MK Realty Group LLC |